**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TIMOTHY W. DAVENPORT and
GUARDIAN MOT, LLC,

Plaintiffs,

v. Case No: 8:18-cv-1064-CEH-CPT

AWP, INC.,

Defendant.
___________________________________/

**ORDER**

This matter comes before the Court on Plaintiff Timothy Davenport's ("Davenport") Motion to Set Aside Injunction (Doc. 51). Davenport requests the Court set aside the injunction entered against him on June 19, 2018. Defendant AWP, Inc. ("AWP") filed a response in opposition (Doc. 56). An evidentiary hearing was held on February 11, 2021, on Davenport's motion and the Court's Order to Show Cause why Davenport should not be held in civil contempt for violating the June 2018 injunction. Following the hearing, the parties submitted additional briefing. Docs. 75, 76. The Court, having considered the motion, reviewed the parties' submissions, heard testimony of witnesses and argument of counsel, and being fully advised in the premises, will grant Davenport's Motion to Set Aside Injunction.

## I. BACKGROUND

Davenport was formerly employed by AWP as a field manager. Doc. 2 ¶ 8. AWP, an Ohio corporation doing business in Pinellas County, is in the business of

providing traffic control services and equipment to state agencies, contractors, and others. *Id.* ¶ 3. As part of his employment with AWP, Davenport signed a "Confidentiality, Non-Competition & Non-Solicitation Agreement" (the "Agreement") in which he agreed not to be connected, associated, have an interest in, or give advice or consultation to a competitive business within a 120-mile driving distance from his regularly assigned place of duty or office for a period of 12 months following the conclusion of his employment. *Id.* ¶¶ 11, 18; *see also* Doc. 2-1. Following the termination of his employment with AWP in June 2017, Davenport began work for Guardian MOT, LLC ("Guardian") in Fort Myers, Florida. *Id.* ¶¶ 2, 23, 29.

In April 2018, Davenport and Guardian, through counsel, filed a declaratory judgment action against AWP in Pinellas County state court seeking a declaration of the parties' respective rights under the Agreement, challenging the reasonableness of the geographic scope, and seeking a determination as to the termination date of the Agreement. Doc. 2. AWP removed the matter to this Court. Doc. 1. AWP answered the complaint, denied the claims and filed a multi-count counterclaim seeking damages and a permanent injunction against Davenport and Guardian. Doc. 7. AWP thereafter moved for a preliminary injunction. Doc. 8. Davenport and Guardian denied the allegations of the counterclaim and opposed the preliminary injunction. Docs. 20, 21.

On June 6, 2018, the parties notified the Court that, through their respective legal counsel, they had settled all claims and disputes among them. Doc. 22. They further notified the Court that the terms of their settlement involved, among other

things, Davenport and Guardian consenting to the Court's entry of an injunction prohibiting Davenport and Guardian from engaging in certain conduct for specified periods of time. *Id.* The parties submitted a stipulation to the Court representing that all parties agreed to the form of the permanent injunction that they jointly requested the Court to enter. Doc. 22-1. Pursuant to the parties' stipulation, the Court entered the proposed permanent injunction against Davenport and Guardian on June 19, 2018 (Doc. 24), which Davenport now seeks to vacate.

The Permanent Injunction provided, in part, that (1) until midnight on June 5, 2021, Davenport would abide by all terms of Paragraph 2(b) of the Agreement, which pertained to confidentiality; (2) until midnight on June 5, 2019, neither Guardian nor Davenport would solicit current AWP employees to cease employment with AWP; (3) until midnight on December 31, 2018, neither Guardian nor Davenport would solicit, apply for, or seek to perform any work outside of the geographical territory defined by a map attached to the Order ("Fort Myers Territory"), irrespective of who the client may be, but during that same time frame, Davenport and Guardian could solicit clients and prospective clients within the Fort Myers Territory; and (4) until midnight on December 31, 2018, neither Davenport nor Guardian would perform work for any client outside of the Fort Myers Territory, or apply for or accept business from any clients outside of the Fort Myers Territory, but within that time period Davenport and Guardian could perform work within the Fort Myers Territory. *Id.* at 2–4. Except for the provision regarding confidentiality, all other provisions under the injunction have expired.

Following the entry of permanent injunction, the case was dismissed and administratively closed subject to the right of any party to move within 70 days to reopen the case. *Id.* On August 28, 2018, AWP moved to reopen the case and for an order to show cause why Davenport should not be held in contempt for violating the terms of the permanent injunction. Doc. 25. In the Motion, AWP alleges that in mid-July 2018, after the Court entered the Permanent Injunction, Davenport left Guardian and began working as a safety director in Fort Pierce, Florida, for Southeastern Traffic Supply, LLC ("STS"), another competitor of AWP. AWP alleges that Davenport's employment with STS outside the Fort Myers area violated the permanent injunction. Shortly thereafter, Davenport's counsel withdrew. Docs. 27, 28. No new counsel appeared for Davenport, and no response was filed by him to AWP's motion. Accordingly, on November 6, 2018, the Court directed Davenport to respond to AWP's motion for civil contempt. Doc. 29. Again, no response was filed, and the Court granted AWP's motion to re-open the case on February 6, 2019. Doc. 31. The Court directed Davenport to show cause why he should not be held in civil contempt. *Id.* at 6–7.

On February 20, 2019, proceeding *pro se*, Davenport filed a response to the Court's Show Cause Order. Doc. 34. In his response, he explains he was forced to leave Guardian because the company was no longer able to pay his salary due to the limitations agreed to in the permanent injunction. Through his contacts, Davenport was able to find and secure a position as safety director for STS. He argues that the position as safety director did not violate the terms of the injunction which prohibited

him from *soliciting* business outside the Fort Myers area. According to Davenport, he was not supervising crews and his understanding was the injunction did not limit him to working solely in the Fort Myers area. He needed a job and to be able to provide for his family. Davenport disputes the statements made by Jeffrey Garcia, who he describes as a former STS disgruntled employee, that were contained in the affidavit offered by AWP in support of its motion.

In December 2020, the Court held a status conference with the parties via Zoom videoconference. Davenport appeared *pro se* and again stated that the safety director work he did for STS was not the same type of work he was doing for AWP or Guardian and he did not believe his conduct was in violation of the injunction. Doc. 46 at 5–6. He states he did not solicit any clients outside the "red box," referring to the Fort Myers territory that was designated in the injunction. *Id.* at 12. He clarifies that his responsibilities with STS were to train employees, not solicit clients or manage employees. *Id.* at 12–13. The Court scheduled a civil contempt hearing for February 11, 2021. Doc. 45.

On January 26, 2021, Davenport filed, through counsel, a motion to vacate the permanent injunction. Doc. 51. Davenport argues the injunction is not fair, reasonable, or equitable because it prevented him from working anywhere in the world for any business except for a small geographic area around Fort Myers. Davenport further argues the injunction is invalid under Ohio law[1] because the nearly unlimited

---

[1] The Confidentiality and Non-compete Agreement signed by Davenport when employed by AWP was governed by Ohio law. Doc. 2-1 at 5.

scope of the restrictions is unreasonable and far exceeds any legitimate business interest of AWP. Davenport requests this Court set aside the injunction.

AWP responds in opposition (Doc. 56) stating the parties stipulated to entry of the permanent injunction and Davenport violated it almost immediately by leaving his job with Guardian and going to work for AWP's competitor STS in an area outside the scope of what was permitted by the injunction. Contrary to Davenport's representations, AWP contends that Davenport's responsibilities with STS exceeded safety training. AWP additionally argues Davenport cannot show extreme or unreasonable hardship.

At the contempt hearing, Davenport testified that his work for AWP was solely in Florida. Doc. 73 at 22–23. While working for AWP in Florida, he signed a restrictive covenant that limited his ability to work for another company within 120 miles of AWP's office. *Id.* at 24. In February 2018, Davenport went to work for Guardian in Fort Myers which was beyond the 120-mile radius. *Id.* at 24–25. Davenport relocated to Fort Myers for his employment with Guardian; he had no other connection to that area. *Id.* at 25.

According to Davenport, the president of Guardian initiated this lawsuit to give AWP a heads up that they were in the area but not violating the covenant. *Id.* at 26. Guardian and Davenport were represented by the same lawyer. *Id.* The lawsuit resulted in the entry of the permanent injunction at issue here. Davenport's understanding of the permanent injunction was that it prohibited him from engaging in solicitation and sales outside the Fort Myers area while an employee of Guardian.

*Id.* at 27–29. He did not believe the injunction prevented him from doing any work anywhere outside the Fort Myers area. *Id.* at 28.

Within weeks of the injunction being entered, Davenport left the employment of Guardian because the president told him that due to legal fees, Davenport would have to continue working without pay. *Id.* at 30. Davenport was unable to do that because he had bills to pay and his son to support. *Id.* at 30–31. Davenport left Fort Myers and was hired as Director of Safety for STS on the east coast of Florida. *Id.* at 31–32.

## II. LEGAL STANDARD

Under Rule 60, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief. Fed. R. Civ. P. 60(b)(6).

## III. DISCUSSION

Davenport argues the Court should vacate the permanent injunction against him because the injunction's geographic scope precluding his work anywhere outside the Fort Myers area is overly broad and does not support a legitimate business interest.[2] The Court agrees.

[2] Davenport also argues the Court has inherent authority to modify or vacate its own non-final order. While true, the permanent injunction here was a final order. The parties represented to the Court that they fully and finally settled the case and requested the entry of the permanent injunction against Davenport and Guardian. Doc. 22. Once the Court entered the permanent injunction, that left nothing further for the Court to do on the parties' claims. *See, e.g., Martinez v. Carnival Corp.*, 744 F.3d 1240, 1244 (11th Cir. 2014) ("pertinent question . . . is whether the district court's order . . . ended the litigation on the merits and left nothing more for the district court to do but execute the judgment"); *SEC v. First Fin. Group of Tex.*,

At the parties' request, the Court entered the stipulated permanent injunction on June 19, 2018. In relevant part, the injunction provided as follows:

> Until midnight on December 31, 2018, neither Guardian nor Davenport shall solicit, apply for or seek to perform any work outside of the geographical territory defined by the red line on the map attached hereto as Exhibit A, irrespective of who the client or prospective client might be. Prior to midnight on December 31, 2018, Guardian and Davenport only may solicit clients and prospective clients for work to be performed within the geographical territory defined by the red line on Exhibit A. Davenport and Guardian shall have the right to contact and network with their social and business contacts, wherever located, at all times as long as no such contact or networking violates the terms of this Order.
>
> Until midnight on December 31, 2018, neither Davenport nor Guardian shall perform any work for any client, irrespective of who the client might be, outside of the geographical territory defined by the red line on Exhibit A, nor will Davenport or Guardian apply for or accept business from any clients – whether associated with AWP or not – to be performed outside of the geographical territory defined by the red line on Exhibit A. Prior to midnight on December 31, 2018, Guardian and Davenport may only perform work within the geographical territory defined by the red line on Exhibit A.

Doc. 24 at 3. For a restrictive covenant to be valid under Florida law, "[t]he person seeking enforcement of [the] restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla.

---

645 F.2d 429, 433 (5th Cir. Unit A May 1981) ("Once an order of permanent injunction is entered . . ., the order of preliminary injunction is merged with it, and appeal is proper only from the order of permanent injunction."). The Court administratively closed the case following entry of the injunction. *See* Docket Entry dated June 20, 2021. Administrative closure, however, is not dispositive of finality; rather the focus is on the effect of the district court's order. *Martinez*, 744 F.3d at 1244.

Stat. § 542.335(1)(b). Additionally, restrictive covenants must be reasonable with regard to time, area, and line of business. *See* Fla. Stat. § 542.335(1). Relevant here, Davenport claims that the geographic scope of the injunction limiting his ability to work only in the geographic area of Fort Myers is unreasonable. "Whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237–38 (11th Cir. 2009) (quoting *Whitby v. Infinity Radio Inc.*, 951 So.2d 890, 897 (Fla. 4th DCA 2007). Ohio law similarly requires restrictive covenants to contain a reasonable geographic scope. *See MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 964 (N.D. Ohio 2009) (finding the non-compete agreement's geographic reach of the "entire United States" to be unreasonably broad) (citing *Segal v. Fleischer*, 113 N.E.2d 608 (1952) (stating that because the covenant contained no restriction as to area covered, it was not reasonably limited)).

Upon further consideration of the permanent injunction that the parties presented as stipulated, the Court agrees with Davenport that the geographic scope of the injunction is wholly overbroad and unreasonable. Application of the terms of the injunction to Davenport results in precluding Davenport from working *anywhere* in the world outside of Fort Myers for the specified period of time. This broad geographic scope is not tied to any legitimate business interest of AWP. And such wide-sweeping restriction cannot be considered reasonable.

AWP's reliance on district court opinions finding a party who consents to particular restrictions to be bound thereby, *see* Doc. 56 at 9–11, is unpersuasive.

Critically, AWP's argument is founded upon the premise that Davenport made a knowing, counseled acceptance of the restrictions. It was apparent to the Court from Davenport's testimony, however, that his knowledge and understanding of what he was agreeing to was far different than what was submitted to the Court by the attorneys as stipulated by all parties.[3] Further, it is apparent that Guardian and Davenport's interests were not necessarily aligned, notwithstanding their shared counsel. Finally, district court opinions are not binding on this Court.

AWP's attempts to factually distinguish those cases cited by Davenport on the basis that everyone here "agreed" to the terms of the permanent injunction also fall flat. In response to inquiry of Davenport by the Court at the hearing, Davenport testified he never saw nor was copied on the communications between AWP's counsel and his shared counsel regarding the proposed injunction. *See* Doc. 73 at 95–96. While he acknowledged being privy to some of the communications between Guardian, shared counsel and himself, he was not aware of the negotiations to the level of detail expressed in the communications nor would he have expected his shared attorney to push forth the highly restrictive red box area ultimately made a part of the injunction.

[3] The defense claims Davenport is now changing his mind despite "protracted settlement negotiations," but the Court notes the case was first filed in state court in April 2018 (Doc. 1-1), removed to federal court on May 1, 2018 (Doc. 1), and the parties filed a stipulation (Doc. 22) for entry of permanent injunction a little over a month later on June 6, 2018. Of significance, one week prior, on May 30, 2018, Davenport and Guardian filed a 19-page memorandum of law (Doc. 21) opposing AWP's motion for preliminary injunction. Thus, it is unclear when these protracted negotiations occurred. In any event, it was readily apparent from Davenport's testimony at the civil contempt hearing that he was not a part of these negotiations.

*Id.* at 97–99. The Court finds on these facts that Davenport did not knowingly consent to the harsh consequences of the permanent injunction and that to impose a restriction on him that precludes him from being employed anywhere in the world except in the red box area around Fort Myers and prevents him from being able to support his family would be an extreme hardship.

The Court additionally finds the injunction is vague in its terms. The Eleventh Circuit previously held, "a court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (citing *Hughey v. JMS Dev*., 78 F.3d 1523, 1531 (11th Cir.1996). In that regard, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained[.]" Fed. R. Civ. P. 65(d). Thus, pursuant to this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Hughey*, 78 F.3d at 1531 (quoting 11A Wright et al., Federal Practice and Procedure § 2955 at 308–09 (1995)). The language agreed to by the parties, and which was included in the Order, that prohibited Davenport from engaging in "any work for any client, irrespective of who the client might be, outside of the geographical territory defined by the red line" is not only overly broad but also vague, unreasonable, and imprecise.

## IV. CONCLUSION

Counsel who initially filed this lawsuit and counsel for AWP presented the proposed permanent injunction to this Court as stipulated, which the Court accepted at face value. Based upon this representation, the Court entered the permanent injunction as requested. However, upon further consideration and in light of Davenport's testimony, the Court finds the terms of the injunction are overly broad, unreasonable, and unenforceable against Davenport. Accordingly, it is hereby

**ORDERED**:

1. Plaintiff Timothy Davenport's Motion to Set Aside Injunction (Doc. 51) is **GRANTED**.

2. The Order (Doc. 24) entering a Permanent Injunction is hereby **VACATED** as to Timothy Davenport.

3. The Clerk is directed to **VACATE** the Order (Doc. 24) of Permanent Injunction entered June 19, 2018, as to Timothy Davenport.

4. Having vacated the permanent injunction as to Plaintiff Timothy Davenport, there is no basis to hold Timothy Davenport in contempt. Defendant AWP's request to hold Plaintiff Timothy Davenport in contempt is **denied as moot**.

5. The Clerk is directed to terminate all pending deadlines and close this case.

**DONE AND ORDERED** in Tampa, Florida on April 23, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any